## 𝖘𝖙𝖆𝖚𝖓𝖙𝖔𝖓

### CAM WATERMAN V. COMMONWEALTH.

September 23, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Arthur T. Griffith,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Ralph H. Ferrell, Jr., Special Assistant,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The accused was convicted of maliciously wounding Carl Mutter, and sentenced to confinement in the penitentiary for two years.

The two assignments of error present one question—whether or not the evidence for the Commonwealth is sufficient to sustain the verdict. The *corpus delicti* was established by proving that about 3 a. m. on May 28, 1936, Carl Mutter was shot from ambush and severely wounded while he was walking along a narrow lane leading to his home on the side of the mountain. Mutter stated that his unknown assailant was standing on an elevation some five feet above, and between thirty and thirty-five feet from him, when the pistol was fired; that he lay on the ground some ten minutes after he was shot, and hearing nothing further from his assailant, he then arose and walked to the home of Lena Vencill. From there he was taken in a truck to the hospital at Richlands, where he was received about 4 a. m.

The evidence which tends to point to the accused as the criminal agent may be stated thus: Some eleven months preceding April, 1936, the accused was "a steady beau" of Lena Vencill. During that period he made one or more proposals of marriage, which the young lady, for reasons satisfactory to her, declined. Sometime in April, 1936, Carl Mutter, a native of that section, after an absence of more than seven years, which was spent in the United States Army, returned home. Sometime thereafter he began to visit, more or less frequently, Lena Vencill, and in the language of this generation, became "her regular date." Within the ten days immediately preceding the shooting, the ac-

cused wrote Lena Vencill two letters which she showed to Carl Mutter, and then burned. In these letters the accused said that he had been told that Carl Mutter was sent home from Lebanon High School; that he drank; that there was nothing to him; "that he wasn't worth a damn," and that he, the accused, "hated to see a nice girl go with a boy like that." The evidence fails to disclose that the accused made any threats against Carl Mutter, indeed he stated that he had never met him, and that he did not know him by sight.

A year previous to the shooting the accused had attempted to borrow a gun, claiming that somebody was stealing "his wheat, corn and stuff," and that he had nothing with which to protect himself. Some two weeks before the shooting he again attempted to borrow a gun claiming that some boys were stealing from him again. On the night of May 27th, Bob Howard, who owns and operates the Triangle Dance Hall, gave an entertainment which the young people of that community attended. Lena Vencill had a date with Carl Mutter for the dance. The accused, whose home is within a quarter of a mile from the dance hall, went to Honaker that afternoon, and returned with Carl Howard, a brother of Bob Howard. On the way from Honaker, Carl Howard informed the accused that he had borrowed a pistol from one Joe Ray, which was then in the possession of Bob Howard at the dance hall, and if the accused wanted to borrow it, he could get it from Bob. Sometime prior to 1 a. m. the accused informed Bob of the conversation he had with his brother Carl, obtained the gun and six cartridges loaded with lead bullets, and placed them under the rear seat of his automobile. About 1:30 a. m. Carl Mutter, Lena Vencill, and four other people left the dance hall in an automobile together. Mutter and Lena Vencill got out of the car at the Vencill home some twenty or thirty minutes later, and there Mutter remained with Lena about forty-five minutes. About 2:30 a. m., or a little later, Carl Mutter left Lena Vencill's home and walked towards his own home, a little over a mile away. He was shot from ambush before he had gone more than a quarter of a mile.

It appears that the Vencill home and the entrance to the lane in which Mutter was ambushed were on a narrow, winding, dirt, mountain road, which intersects the main highway, United States No. 19, at two points. One intersection is a mile and a half east of Triangle Dance Hall. The Vencill home is situated on this mountain road one mile from the main highway. The other end intersects the highway one mile west of the dance hall, and the Vencill home is some five miles from this intersection. The Commonwealth contends that the accused went from the dance hall via the western route to the lane, and there lay in ambush for Mutter. The weakness of this contention lies in the fact that no witness for the Commonwealth places the accused nearer the scene of the crime than the dance hall, which, as stated, is some three miles by the shortest way, the one used by Mutter and his five companions, and some six miles by the longest way, five miles of which is barely passable for an automobile. Bob Howard said that the dance hall closed about 2 or 2:30 a. m., but no witness for the Commonwealth stated what time the accused left the hall. Several witnesses for the accused, among whom was a brother of Lena Vencill, stated that they did not leave the hall until 3 a. m., and that the accused was there when they left. If we accept this uncontradicted evidence, then it seems to have been impossible for the accused to have been at the scene of the crime at the time Mutter was shot.

The evidence detailed above is insufficient to prove that the accused was the criminal agent. The only other evidence which tends to point the finger of suspicion at the accused is inconsistent statements made by him to the officers at the time of his arrest, about the possession of the pistol.

The Commonwealth made no attempt to prove that the leaden bullet extracted from the leg of Carl Mutter was fired from the 32 caliber pistol that was in possession of the accused on the 27th and 28th of May. Accepting as true the testimony of the police officers, that the accused denied borrowing the pistol from the Howard brothers, still there is no direct evidence tending to connect him with the com-

mission of the crime. All of the circumstantial evidence relied upon by the Commonwealth fails to exclude every reasonable hypothesis "other than that the defendant was guilty." Indeed, but for the statement of the officers that the accused denied having in his possession a pistol of the same caliber as that with which the wound was inflicted, no foundation for suspicion against the accused would have been established.

For the reasons stated the judgment of the trial court is reversed, the verdict of the jury set aside, and the case is remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*